

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

FTB:EWS/DR                                                    *271 Cadman Plaza East*
F. #2022R00167                                              *Brooklyn, New York 11201*

March 1, 2023

<u>By ECF</u>

The Honorable Hector Gonzalez
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                         Re:     United States v. Brian Quinones
                                 <u>Criminal Docket No. 22-218 (HG)</u>

Dear Judge Gonzalez:

        The government respectfully submits this letter in advance of sentencing in the
above-referenced case, currently scheduled for March 9, 2023 at 11:00 a.m., and in response to
the defendant's February 23, 2023 sentencing submission (hereinafter "Def. Mem."). On
September 28, 2022, the defendant pleaded guilty pursuant to a plea agreement to Count Seven
of an eleven-count indictment, which charged the defendant with the sexual exploitation of a
child, in violation of Title 18, United States Code, Section 2251(a). For the reasons explained
below, the Government submits that a sentence within the effective Guidelines range of 180 to
210 months would be sufficient, but not greater than necessary, to comply with the statutory
directives set forth in 18 U.S.C. § 3553(a).

    I.      <u>Background</u>

        The facts underlying the offense conduct in this case are set forth in the
Presentence Investigation Report ("PSR"), to which the government has no objection.

        Between September 2019 and January 2020, the defendant used an instant
messaging application called Kik to trade roughly 300 files depicting child pornography with
another individual (hereinafter, "Individual-1"). PSR ¶ 6. The videos and images depicted male
minors who appeared to be between ages six and sixteen engaging in a variety of sexually
explicit conduct, including masturbation, oral sex and anal sex. <u>Id.</u> ¶¶ 6–8 (detailing contents of
certain files).

        The defendant and Individual-1 discussed the files they shared in graphic terms.
For example, after sending various files depicting child pornography, the defendant wrote, "I
wonder what this white boy looks like now . . . He prob was kidnapped as a baby[.]" <u>Id.</u> ¶ 9.

Later in the conversation, after Individual-1 expressed his preference for younger victims, the defendant encouraged Individual-1 to sell the videos, writing, "They definitely not older than 15[.]  Trust me it will be a be[s]t seller."  Id.  He later boasted to Individual-1 that "half the boys you selling.  You got those files from me."  Id.  In another exchange about a different video, the defendant wrote, "He so cute though.  Like a lil slave[.]"  Id.  He then proceeded to describe various sexual acts that he would like done to the victim in the video, before remarking, "He is a trained whore.  What else he good for . . .  I wanna find him . . .  He gonna cry but idgaf."  Id.

After discovering the defendant's messages with Individual-1, law enforcement agents went to the defendant's residence to ask him about trading child pornography, which he denied.  Id. ¶ 14.  Within minutes of the agents' leaving his home, the defendant deleted over three thousand files associated with the Kik account the defendant used to distribute child pornography.  Id. ¶ 17.

Shortly thereafter, law enforcement obtained and executed a warrant to search the defendant's residence and seized his electronic devices.  Id. ¶ 10.  While reviewing the contents of the defendant's laptop, agents discovered a backup for a mobile telephone that included a series of WhatsApp messages between the defendant, who posed as a woman, and a minor victim, identified in the indictment as John Doe, who was 15 years old at the time of the exchange.  Id.  The defendant sent John Doe a video of "herself" masturbating and solicited sexually explicit material from John Doe.  Id.  Acting at the defendant's direction, John Doe created and sent two videos of himself masturbating.  Id.  The defendant then warned John Doe, "B[***]h [I] got everything u sent," later adding that he would "ruin" John Doe.  The defendant directed John Doe to do "[e]verything [I] tell u to do" and to "behave."  He then wrote, "Get on your hands and knees[.]  In a one minute vid[.]  Naked[.]"  When John Doe declined to do so, the defendant threatened, "I[']m ready to make u famous[.]  Any last words?"  Id.

In addition to evidence of the defendant's engaging in "sextortion" himself, as described above, the defendant's electronic devices also contained several messages in which the defendant and others discussed how to commit "sextortion."  Id. ¶¶ 11, 12.  For example, the defendant discussed an ongoing extortion scheme in a series of direct messages with another user on his Twitter account.  The defendant urged the other use, "Threaten him to do more . . . I like making boys into slaves[.]  They would ride plungers not to get exposed[.]"  Id. ¶ 11.  Some of the defendant's devices also contained several screenshots of messages appearing to reflect victims being subjected to such "sextortion" schemes.  Id.  The participants in these conversations also discussed trading the child pornography they obtained as part of these sextortionate schemes.  Id.  Other seized devices contained evidence indicating that the defendant researched  how to operate such schemes.  For instance, a review of a cell phone used by the defendant shows that he entered the following queries (among others) into his Internet search browser:  (1) "forcing boys to send nudes sextortion;" (2) "forcing boys to send nudes;" (3) "sextortion boys;" (4) "boy raped sextortion;" (5) "sextortion chat;" and (6) "minor boy in MP arrested for blackmail extortion used banned apps."  Id. ¶ 13.

The defendant was arrested on May 11, 2022.  Id. ¶ 19.  For the year before his arrest, the defendant worked as a paraprofessional in a one-on-one capacity with students at Midwood High School in Brooklyn.  Id. ¶ 15.

2

II.     Guidelines Calculation

The Probation Department calculated the United States Sentencing Guidelines (the "Guidelines" or U.S.S.G.") range for the defendant as follows:

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. § 2G2.1) | | 32 |
| Plus: | The offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years (U.S.S.G. § 2G2.1(b)(1)(B)) | +2 |
| Plus: | The offense involved the knowing misrepresentation of a participant's identity (U.S.S.G. § 2G2.1(b)(6)(A)) | +2 |
| Plus: | The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction and the obstructive conduct related to a closely related offense (U.S.S.G. § 3C1.1) | +2 |
| Less: | Acceptance of responsibility | -3 |
| Total: | | 35 |

The parties agree with this calculation.  See Def. Mem. at 1.  Based on a total offense level of thirty-five and a Criminal History Category of I, the Guidelines range is 168 to 210 months imprisonment.  However, as the statutorily authorized minimum sentence is fifteen years, the restricted Guideline Range is 180 to 210 months.

III.     The Appropriate Sentence

As the Court is aware, under United States v. Booker, 543 U.S. 220, 245 (2005), the Guidelines are advisory and not mandatory.  The Supreme Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but that they also may tailor the sentence in light of other statutory concerns.  Booker, 543 U.S. at 220; see 18 U.S.C. § 3553(a).  "[S]entencing judges remain under a duty with respect to the Guidelines . . . to consider them, along with the other factors listed in section 3553(a)."  United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party"; the Court "may not presume that the Guidelines range is reasonable" and "must make an individualized assessment based on the facts presented."  Id. at 49-50 (citation and footnote omitted).

3

Section 3553(a) requires a court to consider a number of factors in imposing sentence, including the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the violation, to promote respect for the law, and to provide a just punishment for the violation; the need for the sentence to afford adequate deterrence to criminal conduct; to protect the public from further crimes or violation of the defendant; and to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner. The court must also consider the kinds of sentences available, the applicable sentencing guidelines and pertinent policy statements, and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553(a)(1)-(6).

The government respectfully submits that a sentence within the Guidelines range of 180 to 210 months is appropriate in this case. As an initial matter, the "nature and circumstances of the offense" – the sexual exploitation of a child – is not only extremely serious, it is one of the most insidious victimizations of children. The prevention of the sexual exploitation and abuse of children is an objective of paramount importance in the criminal laws passed by Congress, due to the psychological and physical effects that abuse has on children and their families, effects that last for a lifetime.

The primary victims in child pornography offenses are the children depicted in the defendant's child pornography. United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001); United States v. Sherman, 268 F.3d 539, 547–48 (7th Cir. 2001). As the Sherman Court noted, "child pornography directly victimizes the children portrayed by violating their right to privacy," Sherman, 268 F.3d at 547, and "children . . . suffer profound emotional repercussions from a fear of exposure[] and the tension of keeping the abuse a secret[.]" Shutic, 274 F.3d at 1126 (citations omitted).

The possession of images of child sexual victimization is not a victimless crime. Even a "passive consumer who merely receives or possesses the images directly contributes to this continuing victimization." Sherman, 268 F.2d at 545 (citations and marks omitted). "Indeed, one of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted." Id. at 547. Adequate punishment, respect for the law and just punishment all call for a serious sentence of imprisonment. See 18 U.S.C. § 3553(a)(2).

Here, the defendant possessed multiple videos and images with shocking and disturbing content. See PSR at ¶¶ 6-9. These videos and images depicted graphic sexual abuse of male minors who appeared to be between the ages of six and sixteen, including at least one video that showed oral and anal intercourse by a middle-aged male with a minor victim. Id. But what makes the defendant's conduct in this case especially heinous is not only did the defendant share and receive links to child pornography, but the defendant encouraged and facilitated its production and distribution by sexually exploiting innocent children. Id. ¶ 10. Specifically, the defendant solicited sexually explicit material from John Doe, and after receiving two videos of John Doe masturbating, the defendant threatened John Doe that if John Doe did not do everything the defendant told him to do that the defendant would "ruin" John Doe by releasing the videos—"I['] m ready to make u famous[.] Any last words?" Id. ¶¶ 10-13.

4

The government acknowledges the difficulties the defendant has faced as set forth in more detail in the PSR and the defendant's sentencing memorandum, but given the serious nature of the charged offense and the numerous victims of the defendant's actions, the government submits that a sentence within the Guidelines is sufficient, but not greater than necessary to serve the goals of sentencing in this case.

In addition, the defendant is subject to mandatory restitution in this case, as stipulated in his plea agreement. To date, restitution requests have been received from some, but not all of the known victims identified in the instant offense. Simultaneous with this submission, the government is filing a submission under seal regarding restitution, including restitution requests from the victims of the defendant's offense.

IV.     Conclusion

The seriousness of the underlying offense is evident on its face and adequate punishment, deterrence and, most importantly, protection of children all call for a significant sentence. The government therefore requests that the Court impose a sentence within the Guidelines range of 180 to 210 months, which would be sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/_____
        Eric Silverberg
        Dana Rehnquist
        Assistant U.S. Attorneys
        (718) 254-7000

cc:     Clerk of Court (HG) (by ECF and e-mail)
        Counsel of Record (by ECF and e-mail)

5